April 30, 1993
[SYSTEMS NOTE: This appendix is only available through the
 Clerk's Office in Boston.]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 91-1323 

 THERESA H. WOOD,

 Plaintiff, Appellee,

 v.

 UNITED STATES OF AMERICA,

 Defendant, Appellee.

 

 CHARLES D. OWENS,

 Defendant, Appellant.

 

No. 91-1324

 THERESA H. WOOD,

 Plaintiff, Appellee,

 v.

 UNITED STATES OF AMERICA,

 Defendant, Appellant.
 

 ERRATA SHEET

Please make the following correction in the opinion in the
above case release on April 28, 1993:

The following two-page Appendix (Excepts from the Federal Tort
Claims Act, 28 U.S.C. 1346, et. seq.) should be affixed to the
end of the opinion.

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 91-1323 

 THERESA H. WOOD,

 Plaintiff, Appellee,

 v.

 UNITED STATES OF AMERICA,

 Defendant, Appellee.

 

 CHARLES D. OWENS,

 Defendant, Appellant.

 

No. 91-1324

 THERESA H. WOOD,

 Plaintiff, Appellee,

 v.

 UNITED STATES OF AMERICA,

 Defendant, Appellant.
 

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Walter Jay Skinner, U.S. District Judge]
 
 

 Before

 Breyer, Chief Judge,
 
 Coffin, Senior Circuit Judge,
 
 Torruella, Selya, Cyr, Boudin, and Stahl, Circuit Judges.
 
 

Mark W. Pennak, Attorney, Appellate Staff, Civil Division,
 
Department of Justice, with whom Stuart M. Gerson, Assistant
 
Attorney General, Wayne A. Budd, United States Attorney, and
 
Barbara L. Herwig, Attorney, Appellate Staff, Civil Division,
 
Department of Justice, were on brief for appellants.
Stuart DeBard for appellee.
 

 

 April 28, 1993
 

 OPINION EN BANC
 

 BREYER, Chief Judge. The Westfall Act provides a
 

federal employee with immunity from an ordinary tort suit if
 

the suit arises out of acts performed "within the scope of"

the defendant employee's "office or employment." The

immunity attaches when the Attorney General files with the

court a certificate stating that

 the defendant employee was acting within
 
 the scope of his office or employment at
 
 the time of the incident out of which
 
 the claim arose.
 

28 U.S.C. 2679(d)(1) (emphasis added). Upon filing this

certificate, the Attorney General can remove the case to

federal court (if it started in state court), substitute the

United States as defendant, and, effectively, immunize the

employee from any personal liability. 28 U.S.C. 2679(d).

 This appeal focuses on whether the Attorney

General may issue a Westfall Act certificate that simply

denies that any injury-causing action occurred. Suppose a

plaintiff claims that a federal employee committed acts

clearly outside the scope of employment, as here, where the

plaintiff has alleged sexual harassment amounting to

"assault and battery." Can the Attorney General certify

that there simply was no such event? To rephrase this

question using the statutory terms underlined above: Can the

certificate grant immunity simply by denying the occurrence

 -4-

of any "incident out of which the claim arose?" Would such

a certificate fall within the scope of the immunity statute?

 The legal question is important, for, where a

plaintiff alleges a serious intentional tort, say assault or

rape, and also presents enough evidence to survive a summary

judgment motion, the answer will affect the plaintiff's

right to a jury trial. A "yes" answer means that the

Attorney General and the trial judge (reviewing the

certificate) will decide whether or not the alleged assault

occurred. A "no" answer reserves the basic factual issues

for a jury, in effect, maintaining the plaintiff's Seventh

Amendment right to a trial by jury in "Suits at common law."

U.S. Const. amend. VII. 

 In our view, the answer is "no." This "no" answer

finds support in the statutory language, read together with

related provisions; the legislative history; the relevant

case law background; and direct precedent from other

circuits. We find nothing to suggest that Congress intended

a contrary result. We therefore conclude that the Westfall

Act certificate cannot deny the basic "incident" charged,

though (as we shall explain in Part III) the certificate

need not accept the plaintiff's version of just how it
 

 -5-

occurred.

 I

 Background
 

 Theresa Wood, the plaintiff, worked as secretary

to the federal employee defendant, Charles Owens, an Army

Major. She filed a federal court complaint against the

United States and Major Owens. The complaint alleges that

in October 1987 Major Owens told Mrs. Wood that he wanted to

go to a hotel with her; that later in 1987 he called her

into his office, "grabbed her arm, pulled her toward him,

caressed her arm, took lint from her blouse and said, 'I

like you, I like you a lot and I want to be intimate with

you;'" that in January 1988, he told her that he "would like

to have a relationship together -- a sexual one;" and that

in February 1988 he told her that she was not right for the

job and would have to leave. Eventually, for reasons not

here relevant, the district court dismissed the complaint

insofar as it charged violations by the United States of

various specified provisions of federal and state law. The

complaint, however, also set forth state law claims of

assault and battery, and civil rights violations against

Major Owens. See Mass. Gen. L. ch. 12, 11I. The district
 

 -6-

court did not dismiss these state law claims, over which it

retained diversity jurisdiction. 28 U.S.C. 1332.

 The United States Attorney then filed (in what had

become a state law, diversity action) a Westfall Act

certificate. See 28 C.F.R. 15.3 (delegating Attorney
 

General's certification authority to the United States

Attorney). It said that Owens, "at all times referenced in

the . . . Complaint," was "acting within the scope of his

office as a commissioned officer of the Armed forces of the

United States." In an accompanying affidavit, Owens simply

denied Wood's factual allegations. He said,

 I never spoke in a sexually suggestive
 manner to plaintiff nor did I at any
 time ever proposition or otherwise make
 any sexual advances towards plaintiff.

The United States Attorney, denying that any relevant

incident had occurred, asked the court to substitute the

United States for Owens as defendant, 28 U.S.C. 

2679(d)(1), and (because of federal preemption of state

civil rights law and a special law preserving sovereign

immunity for intentional torts) to dismiss the resulting

claims against the United States. See 42 U.S.C. 2000e-16;
 

28 U.S.C. 2680(h).

 The district court would not permit the

substitution because it believed the Westfall Act

 -7-

certificate was inadequate. It pointed out that the

complaint alleged facts, which (if true) showed Owens'
 

actions fell outside his "scope of office or employment."

See 28 U.S.C. 2671 (defining "scope of office or
 

employment" to mean a military officer's "line of duty");

Lutz v. United States, 685 F.2d 1178, 1182 (9th Cir. 1982)
 

("line of duty" is defined by the relevant state's law of

respondeat superior); Miller v. Federated Dep't Stores,
 

Inc., 364 Mass. 340, 348, 304 N.E.2d 573, 579 (1973)
 

(Massachusetts law of respondeat superior places intentional
 

tort outside line of duty, or scope of employment, unless
 

committed to stop victim's interfering with employee's job

performance); Doe v. United States, 618 F. Supp. 503, 505-06
 

(D.S.C. 1984) (sexual harassment outside the line of duty),

aff'd, 769 F.2d 174 (4th Cir. 1985); Turner v. United
 

States, 595 F. Supp. 708, 710 (W.D. La. 1984) (same). And,
 

the court added, the government did not deny that the acts

would have fallen outside the "scope of employment" had they

occurred.

 On appeal, a panel of this court affirmed the

district court, for similar reasons. Sitting en banc, we,

too, affirm the district court's determination, but for

somewhat different reasons.

 -8-

 II

 Denying the "Incident"
 

 Congress did not directly consider the question

before us: whether or not the Attorney General's

certificate can simply deny that any "incident" occurred.

The statute's language, history, and precedent, however,

convince us that the certificate cannot deny the occurrence

of the basic incident charged.

 A

 The Statute Itself
 

 1. The Provision's Language. The Westfall Act
 

itself says that, to provide immunity, the Attorney General

must certify that the defendant employee was "acting within
 

the scope of his office or employment at the time of the
 

incident out of which the claim arose." 28 U.S.C.
 

 2679(d)(1). The dissent reads these words as permitting

the Attorney General to obtain immunity for any alleged
 

working-hour tort simply by denying that anything unusual

occurred "at the time." But, it seems to us more natural to
 

read these words as speaking of an action "at the time of
 

the incident," thus assuming some kind of "incident"
 

occurred.

 After all, the basic point of immunity doctrine is

 -9-

to provide government employees with a defense for conduct

that falls into certain categories. See, e.g., Barr v.
 

Matteo, 360 U.S. 564, 573-74 (1959); Mitchell v. Forsyth,
 

472 U.S. 511, 525 (1985); Harlow v. Fitzgerald, 457 U.S.
 

800, 818 (1982). The doctrine normally comes into play, not

when the defendant denies the conduct charged, but when the

defendant asks a court to characterize the conduct. The
 

point of the certificate is to assert such a

characterization, namely to claim that a (hypothetically

conceded) "incident" involved activity that was "within the

scope of employment."

 2. The Statutory Scheme. The surrounding
 

statutory provisions support our natural reading of the

provision's language, for they reveal that Congress intended

the Westfall Act to immunize employees from claims of

wrongdoing of a particular type, not claims of wrongdoing at
 

a particular time. The "type" consists of the sort of
 

wrongdoing for which employers, typically, are vicariously

liable under principles of respondeat superior. The
 

statutory scheme does not concern claimed wrongdoing that

falls outside respondeat superior's traditional bounds,
 

regardless of when the wrongdoing allegedly occurred.
 

 The statutory scheme involves both the Federal
 

 -10-

Tort Claims Act's waiver of sovereign immunity and the

Westfall Act's creation of employee immunity. The waiver

enables tort plaintiffs to bring against a special employer,

namely the federal government, the same kind of ordinary
 

tort action that plaintiffs often bring against private
 

employers, namely an action claiming that an employee

wrongfully hurt the plaintiff and that the employer is

liable under the doctrine of respondeat superior. Section
 

1346(b) of the Federal Tort Claims Act, which is a general

waiver of sovereign immunity, seeks to permit just this type

of action. It says:

 [T]he [federal] district courts . . .
 shall have exclusive jurisdiction of
 civil actions on claims against the
 United States, for money damages, . . .
 for injury . . . caused by the negligent
 or wrongful act or omission of any
 employee . . . while acting within the
 
 scope of his office or employment, under
 
 circumstances where the United States,
 
 if a private person, would be liable to
 
 the claimant in accordance with the law
 
 of the place where the act or omission
 occurred.

28 U.S.C. 1346(b) (emphasis added). But see 28 U.S.C.
 

 2680 (limiting the waiver in various ways).

 The Westfall Act goes on to create a type of

respondeat superior immunity for federal employees that
 

roughly tracks the federal government's respondeat superior
 

 -11-

liability. The Westfall Act sets forth a Basic Statement of

employee immunity which (edited to emphasize our point)

says,

 [1] The remedy against the United States
 provided by section [] 1346(b) . . . 
 

 [2] for injury . . . arising or
 resulting from the negligent or wrongful
 act or omission of any employee . . .
 while acting within the scope of his
 
 office or employment
 

 [3] is exclusive of any other civil
 action . . . for money damages by reason
 of the same subject matter against the
 
 employee whose act or omission gave rise
 to the claim . . . .

28 U.S.C. 2679(b)(1) (emphasis added). Part 1 of this

statement cross-references Section 1346(b)'s waiver of

sovereign immunity. Part 2 uses language almost identical

to that in Section 1346(b). And, Part 3's operative words

granting immunity from actions seeking damages by reason of

the "same subject matter" would therefore seem to refer, in

a general way, to the respondeat superior circumstances
 

found in the kind of suit that Section 1346(b) describes. 

 The Westfall Act subsection now before us uses

similar language. It provides for substitution where the

Attorney General certifies that

 the defendant employee was acting within
 the scope of his office or employment at
 the time of the incident out of which

 -12-

 the claim arose . . . 
 

28 U.S.C. 2679(d)(1) (emphasis added). The language

"acting within the scope of his office or employment" tracks

the language of Section 1346(b). The reference to "the

claim," appearing right after the Basic Statement, seems to

refer to the Basic Statement's kind of claim. And, as we

have said, the Basic Statement, in turn, refers to Section

1346(b), which creates liability if there is 1) an "injury"

2) "caused by" 3) an employee's "negligent or wrongful act

or omission," where 4) the employee acted "within the scope

of office or employment," and 5) "under circumstances" where

state law would make a private employer liable for an

employee's "act or omission."

 The federal government's liability under the

Federal Tort Claims Act is not perfectly congruent with the

federal employee's immunity under the Westfall Act. The

sovereign immunity waiver contains exceptions and

limitations that the Westfall Act does not contain (but

outside of Section 1346(b)). See, e.g., United States v.
 

Smith, 111 S. Ct. 1180, 1185 (1991) (exception for torts
 

"arising in a foreign country," 28 U.S.C. 2680(k)); Kelly
 

v. United States, 924 F.2d 355, 362 (1st Cir. 1991)
 

("discretionary function" exception, 28 U.S.C. 2680(a));

 -13-

Nasuti v. Scannell, 906 F.2d 802, 805, 806 (1st Cir. 1990)
 

(limitation for co-employee plaintiff, 5 U.S.C. 8116(c),

and exception for assault and battery, 28 U.S.C. 2680(h));

Hamrick v. Franklin, 931 F.2d 1209, 1212 (7th Cir. 1991)
 

(exception for libel and interference with contract rights,

28 U.S.C. 2680(h)). And, the federal government may

escape liability under Section 1346(b), even if the employee

is immune, by asserting state or federal law defenses. 28

U.S.C. 2674. Nonetheless, the language of the basic

"government-liability-creating" and "employee-liability-

removing" provisions makes clear that both sets of

provisions involve the same basic kind of case, namely a
 

respondeat superior kind of case. And that fact is critical
 

here. Since Congress intended to limit grants of immunity

to job-related, respondeat superior, kinds of cases, there
 

is no reason to apply the Westfall Act in cases that

concededly do not involve any kind of potential respondeat
 

superior liability. Nor, is there any reason to interpret
 

that Act as taking from the jury its traditional job of

deciding whether an egregious tort (well outside the "scope

of employment"), in fact, occurred.

 There is, then, no reason to give the statute

before us other than its natural reading, a reading that

 -14-

requires the Attorney General to assume (for immunity-
 

asserting purposes), not to deny, the occurrence of some
 

"incident" underlying the plaintiff's claim. The Attorney

General need not deny the incident to obtain the kind of
 

job-related immunity the statute seeks to bestow. And, the

Attorney General should not be able, by denying the
 

incident, to obtain employee immunity for a tort claim that

is not job-related, regardless of whether the Attorney

General believes the claim to be true or false. 

 3. Purpose. One can imagine why Congress
 

decided to link employee immunity to respondeat superior
 

principles as described. Federal employee tort immunity has

a public, not a private, objective, namely the need for

public employees faithfully to discharge their duties. See
 

Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949); Barr
 

v. Matteo, 360 U.S. 564, 571 (1959); Westfall v. Erwin, 484
 

U.S. 292, 296 (1988). It aims at avoiding "exposure" to

"personal liability" in order to prevent "a substantial

diminution in the vigor of Federal law enforcement and

implementation." H.R. Rep. No. 700, 100th Cong., 2d Sess.

3, reprinted in 1988 U.S.C.C.A.N. at 5947. The resulting
 

immunity reflects a balancing of judgments, on the one hand,

about the likelihood that potential tort liability will

 -15-

adversely affect job performance and, on the other, about

the potential harm such immunity might cause potential tort

plaintiffs. That balance may differ as between cases

inside, and outside, the scope of employment. After all,

one might believe that employees often can change their job

performance to avoid, even unfounded, suits based on, say,

negligent performance of that job, but that they lack a

comparable ability to avoid, in a similar way, false charges

of an egregious tort (e.g., murder or assault). And, the

possible effect of such non-duty-related suits on job

performance might seem too uncertain, or too weak, a

justification for depriving a plaintiff of her right to a

jury trial in cases involving non-duty-related egregious

torts. Cf. Granfinanciera, S.A. v. Nordberg, 492 U.S. 33,
 

53 (1989) (Congress may substitute statutory non-jury trial

action for common law jury trial action where former "action

inheres in, or lies against, the Federal Government in its

sovereign capacity."). Hence, the statute, as enacted,

simply reflects different Congressional judgments in

different circumstances.

 As the dissent suggests, pp. 31, 34, infra, our
 

interpretation means that sometimes Driver A, who admits

negligence will receive immunity, while less culpable Driver

 -16-

B, who denies the existence of any accident at all, would

not receive immunity. But, this could be so only where

Driver A can claim that the underlying incident is job-

related, while Driver B cannot make this claim, even

hypothetically, for argument's sake. This result does not

seem anomalous given immunity's job-related public purpose.

And, it is that public purpose, not relative culpability,

that controls the shape of the legal doctrine.

 -17-

 B

 History
 

 The Westfall Act's history offers direct support

for our reading of the Act. First, the House of

Representatives Report suggests that Congress did not intend

the Westfall Act to confer immunity for tort claims outside

the respondeat superior context. It simply says that the
 

Act permits substitution of the United States for the

defendant employee 

 whenever the Attorney General determines
 that the act or omission alleged to have
 caused the claimant's injuries was
 within the scope of the employee's
 office or employment.

H.R. Rep. No. 700, 100th Cong., 2d Sess. 9, reprinted in
 

1988 U.S.C.C.A.N. at 5952. The Report thereby seems to

assume the Section 1346(b) elements of an act that caused an

injury. 

 Second, the Report says that the Act does not

permit substitution where the conduct alleged is

"egregious:"

 [T]he United States will incur vicarious
 liability only for . . . torts . . .
 committed within the "scope of . . .
 employment." If an employee is accused
 of egregious misconduct, rather than
 
 mere negligence or poor judgment, then
 the United States may not be substituted
 as the defendant, and the individual

 -18-

 employee remains liable.

Id. at 5, 1988 U.S.C.C.A.N. at 5949 (emphasis added). This
 

language suggests that the Act does not allow an immunity
 

certificate simply to deny, say, an alleged killing, rape,

assault, or some other "egregious misconduct" that occurs

during working hours. It suggests that the Act requires the

certificate to explain, instead, why the alleged misconduct

was not so "egregious" as to place it outside the employee's

"scope of employment." The dissent's interpretation of the

Act is inconsistent with this statement in the Report.

 Third, Congress intended the Westfall Act to

restore approximately the federal employee tort immunity

that existed prior to the Supreme Court case of Westfall v.
 

Erwin, 484 U.S. 292 (1988). See H.R. Rep. No. 700, 100th
 

Cong., 2d Sess. 3-4 (1988), reprinted in 1988 U.S.C.C.A.N.
 

5945, 5946-47. We have examined the pre-Westfall Act cases.

The leading immunity cases all involved "incidents" that

defendants conceded to have occurred. Gregoire v. Biddle,
 

177 F.2d 579 (2d Cir. 1949); Barr v. Matteo, 360 U.S. 564
 

(1959); Westfall v. Erwin, 484 U.S. 292 (1988). And, in
 

every other case we have found, the parties conceded or

assumed for immunity-conferring purposes the occurrence of

some kind of harm-causing "act or omission." We could find

 -19-

no contrary example of either an ordinary or a
 

"constitutional" tort case in which a claim of immunity

rested on a denial that any incident occurred. See Chagnon
 

v. Bell, 642 F.2d 1248, 1256 (D.C. Cir. 1980) ("doctrine of
 

immunity assumes official error"), cert. denied, 453 U.S.
 

911 (1981); Scheuer v. Rhodes, 416 U.S. 232, 242 (1974)
 

("Implicit in the idea that officials have some immunity . .

. is a recognition that they may err."); see also Heidelberg
 

v. Hammer, 577 F.2d 429, 432 (7th Cir. 1978) (distinguishing
 

the defense of "absolute immunity" from "failure to state a

claim"). Nothing in the Westfall Act's history suggests

that Congress wanted to change the pre-existing practice in

this respect.

 Fourth, the Westfall Act changed "official

immunity" by overriding the Supreme Court's limitation of

the doctrine to "discretionary functions," 484 U.S. at 296-

97, and by extending to all federal employees a procedural

protection (the certification procedure) previously

available only to government drivers. 28 U.S.C. 2679(d)

(1982) (amended by the Westfall Act). The former purpose is

irrelevant here. The latter offers added support, for

Driver's Act immunity cases, like common law cases, turned

on whether the "incident" (essentially an auto accident)

 -20-

fell within the "scope of employment," not on whether any

basic incident occurred. See, e.g., Henderson v. United
 

States, 429 F.2d 588, 590 (10th Cir. 1970) (looking at "time
 

of the accident"). Moreover, those cases indicate that

Driver's Act "immunity," like Westfall Act "immunity," arose

in a respondeat superior context. See id. 
 

 We recognize that the Driver's Act tied employee

immunity to the government's Section 1346(b), respondeat
 

superior liability more explicitly than does the Westfall
 

Act, for, in the context of removal, the Drivers Act said

that if the federal court finds (before trial) that the

plaintiff would have no Section 1346(b) remedy against the

United States, the "case shall be remanded to the State

court." 28 U.S.C. 2679(d) (1982). This language

indicates that the Driver's Act would not have protected
 

drivers against claims of "egregious torts," whether or not

they allegedly occurred during the driver's work hours. See
 

Henderson, 429 F.2d at 590 (state law respondeat superior
 

principles define "scope of employment); Miller v. Federated
 

Dep't Stores, 364 Mass. at 348, 304 N.E.2d at 579
 

(intentional tort is normally outside scope of employment

unless committed to prevent victim interference with job

performance); McGowan v. Williams, 623 F.2d 1239, 1242 (7th
 

 -21-

Cir. 1980) ("the federal driver" can be sued "in his

individual capacity" if he acted outside his scope of

employment). The Westfall Act, while copying much Driver's

Act language, leaves out this specific remand provision.

But it apparently does so for a reason not here relevant,

namely to make clear that the United States, after

substitution, can assert various defenses that may, or may

not, have been available to the employee. See 28 U.S.C. 
 

2674; H.R. Rep. No. 700, 100th Cong., 2d Sess. 5, reprinted
 

in 1988 U.S.C.C.A.N at 5948 ("ordinary tort defenses . . .
 

available to the United States"). We therefore do not see

how one could find much of significance in this difference.

 C

 Direct Precedent
 

 We have found one circuit court case and one

district court case directly on point. In McHugh v.
 

University of Vermont, 966 F.2d 67 (2d Cir. 1992), the
 

plaintiff claimed that a federal employee had sexually

harassed her. The Attorney General filed a Westfall Act

certificate. The Second Circuit overruled the certificate

because the Act does not permit the government to certify

that the alleged incident is "within the scope of

employment" simply "by denying that the acts occurred." Id.
 

 -22-

at 74. It added (as do we, in Part III) that the Government

need not accept the plaintiff's version of the alleged
 

incident, for it can argue that the "context of the alleged

acts" places them within the "scope of employment." Id.
 

The trial court, it explained, may hold a pre-trial

evidentiary hearing to resolve factual disputes relevant to

"context." Id. Our holding here essentially follows the
 

Second Circuit.

 In Jackson v. United States, 751 F. Supp. 911 (D.
 

Colo. 1990), the plaintiff alleged that the defendant, an

Army psychotherapist had engaged in sexual intercourse with

her during treatment. The district court held invalid a

Westfall Act certificate that simply denied that the alleged

event had taken place. See id. at 913. 
 

 Language, context, history, and precedent lead to

the same general conclusions. 1) The immunity that the

Westfall Act confers upon federal employees arises in, and

is confined to, a certain context, namely the "respondeat
 

superior" context, described roughly in Section 1346(b) of
 

the Federal Tort Claims Act. 2) To permit a Westfall Act

certificate simply to deny that anything occurred would

extend a form of this immunity well outside the "respondeat
 

 -23-

superior" context to "egregious" torts allegedly committed
 

at work. It would permit, to a significant degree, the

Attorney General and district judge (rather than the jury)

to decide whether allegations of such non-work-related torts

were true or false. 3) We therefore conclude that the

certificate cannot assert "immunity" simply by denying that

anything occurred. We read the statute to mean what its

words naturally say, namely that the Attorney General's

certificate must assume the existence of an "incident out of

which the claim arose." 

 III

 What "Incident" Must the Certificate Assume?
 

 We are aware of one important question that we

have not yet asked or answered. Given our interpretation,

could a plaintiff, through artful pleading, transform a job-

related tort into a non-job-related tort simply by alleging,

say an "off-duty" state of mind (such as "malicious" intent)

or by alleging that a negligent action was carried out

intentionally? If so, will federal employees lose, in

practice, the job-related immunity that Congress clearly

intended the Westfall Act to provide?

 Consider, for example, an accident victim who

might normally file a suit charging negligence. Suppose

 -24-

that such a victim also claimed that the defendant employee

acted with a state of mind that, under traditional

respondeat superior doctrine, would place the action outside
 

the "scope of employment," say, an "intentional" or

"deliberate" state of mind. See Miller v. Federated Dep't
 

Stores, 364 Mass. at 348, 304 N.E.2d at 579 (intentional
 

tort is normally outside "scope of employment" unless

committed to prevent victim interference with job

performance). Or, suppose that the victim alleged detailed

facts indicating that, at the time, the employee was on a

"frolic of his own." Weiner v. Mairs, 234 Mass. 156, 158,
 

125 N.E. 149, 150 (1919). To force the Attorney General to

accept all such facts as valid might often prevent her from

removing the case from state court, from substituting the

United States as defendant, and from freeing the employee

from the burden of the lawsuit. 

 This problem, however, does not require an

interpretation that would permit the Attorney General to

deny the basic "incident." Rather, we can (and do) insist

that the certificate assume some kind of harm-causing
 

incident, while leaving the Attorney General free to dispute
 

characterizations of the incident and subsidiary immunity-

related facts. The Second Circuit held precisely the same

 -25-

in McHugh. 966 F.2d at 74. Moreover, we previously held
 

that the Attorney General's certificate may contest a

plaintiff's incident-describing and incident-characterizing

facts and that the court may resolve any such factual

conflicts, relevant to immunity, prior to trial. In Nasuti
 

v. Scannell, 906 F.2d 802 (1st Cir. 1990), the plaintiff,
 

injured while riding in the back of a government truck

driven by federal employee Scannell, sued Scannell, claiming

that Scannell had intentionally injured him by driving fast,
 

thereby jostling him, and throwing him from side to side,

"in spite of" Nasuti's "entreaties" to stop. We assumed

that these factual allegations, if true, would have placed

Scannell's actions outside the "scope of his employment."

See Miller, 364 Mass. at 348, 304 N.E.2d at 579 (intentional
 

torts normally outside "scope of employment"). But, we held

the immunity certificate valid, pending a pre-trial

evidentiary hearing that would resolve the key immunity-

related factual dispute, namely whether Scannell intended to
 

harm Nasuti. See id. at 808. The Attorney General's
 

certificate in Nasuti did not deny the existence of a harm-
 

causing incident. It denied related descriptions and

characterizations of that incident. By way of contrast the

certificate before us denies the existence of any harm-

 -26-

causing incident at all.

 We recognize an obvious problem with the line that

we, like the Second Circuit, have tried to draw. How clear

is the line? Will we later have to answer questions in

particular factual circumstances about the difference

between denying facts that amount to a "characterization" or

"description" and denying that any harm-causing incident

occurred at all? Compare Unwin v. Campbell, 863 F.2d 124,
 

133 (1st Cir. 1988) (extent of defendant's participation in

incident is part of qualified immunity inquiry) with Domegan
 

v. Fair, 859 F.2d 1059, 1065 (1st Cir. 1988) (denial of
 

causation is not part of immunity inquiry) and Bonitz v.
 

Fair, 804 F.2d 164, 167 (1st Cir. 1986) (same), overruled on
 

other grounds, Unwin v. Campbell, 863 F.2d at 132. We
 

concede this kind of administrative problem would likely not

arise were we to read the statute either 1) as permitting

the certificate to deny the "incident" in its entirety, or

2) as insisting that the certificate accept the plaintiff's

alleged account as totally valid. But, we nonetheless

believe the problem is the least potential evil. The

administrative problem is not insuperable. Cases that raise

this kind of issue seem rare. Moreover, we have already

pointed out the more serious harm that would accompany

 -27-

either of the other choices, namely unduly expanding, or

constricting, the practical scope of the immunity that

Congress intended to confer. And, we cannot find in this

administrative consideration justification for imposing a

major restraint upon the plaintiff's right to a jury trial.

Consequently, we believe that our "middle ground" adheres

more faithfully to the statute itself.

 -28-

 IV

 Other Matters
 

 We add two final, unrelated points. First, after

oral argument in this case the Fourth Circuit decided

Johnson v. Carter, No. 90-3077 (4th Cir., Jan. 15, 1993), in
 

which it held that courts cannot review the validity of

Westfall Act certificates. Id. at 7. We previously have
 

held to the contrary. Kelly v. United States, 924 F.2d at
 

357; Nasuti, 906 F.2d at 812. The Government has asked us
 

not to assess our previous holding in respect to

reviewability. And, we shall not do so.

 Second, the Government originally appealed a

totally separate issue, whether or not federal law preempted

certain of Wood's state law claims. The panel refused to

consider that aspect of the appeal on the ground that an

interlocutory appeal did not lie from the district court's

decision of that question. See Zayas-Green v. Casaine, 906
 

F.2d 18, 22 (1st Cir. 1990). We have accepted the panel's

decision on that matter in this en banc proceeding. Hence,

we have not decided the preemption issue on the merits. The

Government remains free to raise the issue on appeal from a

final judgment.

 -29-

 Applying our basic determination of the law to the

case before us, we find that the Government here,

impermissibly, has rested its certificate simply upon a

denial that any "incident" took place. We do not see how it

could characterize the incidents at issue in a way that

would bring them within defendant's "line of duty," and it

has not tried to do so. We consequently believe that the

district court's decision denying substitution and dismissal

was correct, and that decision is

 Affirmed.
 

 -30-

 COFFIN, Senior Circuit Judge, SELYA and BOUDIN, Circuit
 

Judges, dissenting.1 In this case a federal employee
 

charged with an intentional tort said that the alleged

incidents never occurred, and the Attorney General issued a

"scope of employment" certificate under the Westfall Act, 28

U.S.C. 2679, accepting the employee's version of events.

In our view, the Attorney General's scope of employment

certificate must be respected unless and until set aside by

the district court; and the certificate can be set aside only

if the judge determines--in this case, after an evidentiary
 

hearing to decide whether the incidents occurred--that the

employee engaged in improper conduct outside the scope of his

employment.

 I.

 In the Westfall Act, Congress told the Attorney General

to determine whether to certify that a federal employee,

against whom a civil suit has been filed, was acting "within

the scope of his office or employment at the time of the

incident out of which the claim arose . . . ." 28 U.S.C. 

2679(d)(1), (2). Where this certificate issues, the statute

directs that the case, if initially brought in state court,

shall be removed to federal court and in any event that "the

United States shall be substituted as the party defendant."

 

 1This opinion represents the work, as well as the views,
of all three judges so we have signed it jointly.

 -28-
 28

Id. The statute makes the certificate "conclusive" so far
 

as it is used to remove a case to federal court. Id. 
 

2679(d)(2). The statute does not address, and thereby leaves

open, the possibility that where the Attorney General grants

a certificate, it may be reviewed so far as it substitutes

the United States for the employee. 

 On February 8, 1990, the U.S. Attorney for

Massachusetts, who is delegated authority to issue such

certificates, 28 C.F.R. 15.3, issued a Westfall Act

certificate in this case affirming that Owens at all times

referenced in the complaint was "acting with the scope of his

office . . . ." The United States then substituted itself

for Owens. Needless to say, the government has never claimed

that the incidents, if they occurred as Wood alleged, would

be behavior within the scope of Owens' duties. Rather, the

certificate amounts to an assertion that Owens was at all

times acting within the scope of his employment because, in
 

the Attorney General's view, the incidents did not occur as

alleged by Wood.

 Accordingly, we now face a situation in which the

Attorney General's delegate has issued a certificate and the

plaintiff has sought to set it aside. One option--that of

simply assuming the certificate to be true (and the

complaint's allegations false)--we reject. This court has

held that the grant of a scope certificate is reviewable as

 -29-
 29

to substitution because any other reading could foreclose the

plaintiff's claim without a judicial determination. Nasuti
 

v. Scannell, 906 F.2d 802 (1st Cir. 1990).2 The government,
 

after initially resisting such district court review, has now

accepted its necessity.

 We are equally confident that the opposite alternative

must be rejected: the district court cannot proceed merely by

assuming the complaint's allegations to be true and the

certificate false. Such an assumption would give the

plaintiff complete control over the certification process and

permit the certificate to be nullified without any judicial

finding. The statute permits a certificate where "the

defendant employee was acting within the scope of his office

or employment at the time of the incident . . . ." In our

view, this language speaks not to what plaintiff or defendant

may allege but rather to the actual events and their
 

connection to the employee's office or employment.

 Finally, to us it is of no moment that the statute

refers to "the incident out of which the claim arose." It is

an accident of language--a reflection of the most common

case--that the statute posits a "happening." In this case

the Attorney General concluded, as evidenced by the

certificate, that the events claimed by plaintiff did not

 

 2That is so, for example, where the Westfall Act
mandates substitution but the tort is one for which the
United States has not waived its sovereign immunity.

 -30-
 30

occur, at least in the form alleged by Wood. But it is not

difficult to find here a set of "incidents" or occurrences

conceded by everyone: Owens did have a supervisory

relationship with Wood, met and talked with her on various

occasions and danced with her at an official function. What

is disputed is precisely what was said and done on these

occasions, much as a government driver and a private

plaintiff might give two quite different versions of an

accident.

 Indeed, we think the Westfall Act would apply even if

there were less of an "incident" than is indisputably present
 

in this case. For example, surely the statute applies with

the same force whether a postal service driver says that he

did not hit the plaintiff's car or that he did so but was not

at fault. "Incident," in other words, must encompass the

possibility that something did not happen as well as the

possibility that it did.

 Against this background, we confront a single question:

should the judge or the jury make the initial determination

as to what did or did not occur and its relationship to

Owens' office or employment? The case is peculiar only

because the same issue happens to be common both to the

validity of the certificate and to the merits of the

controversy between plaintiff and defendant. If Owens

molested Wood, the certificate is invalid and he is liable;
 

 -31-
 31

if it never happened and he maintained a proper supervisor-

employee relationship, then his behavior toward Wood was

within the scope of his employment and he has no liability.
 

 II.

 Although the question of who should decide is not free

from doubt, we believe that the Attorney General's

certificate cannot be set aside unless and until the district

judge concludes that Wood's version of events is correct and

therefore that Owens could not have been acting within the

scope of his employment. This course appears to us to be the

one most consistent with statutory language, with Congress'

policy, with Supreme Court and other precedent, and with

sound administration of the statute. Each of these points is

addressed in turn.

 We start with the statute's language, as proper

interpretation requires. See Landreth Timber Co. v.
 

Landreth, 471 U.S. 681, 685 (1985). The Westfall Act
 

operates automatically, upon the filing of a certificate, to

remove the case and to substitute the United States for the

employee. The statute provides that "upon certification,

[the] action . . . shall proceed" against the United States,

28 U.S.C. 2679(d)(4). The certificate, in other words, is

an official act with legal consequences unless and until it

is set aside. The official act is reviewable, by

implication, but it is operative until found invalid,

 -32-
 32

protected by the same presumption of validity that ordinarily

attaches to official action. See Citizens to Preserve
 

Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971); United
 

States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15
 

(1926). 

 The certificate filed by the Attorney General in this

case is not facially invalid. As we have noted, there is

nothing in the statute that requires the Attorney General or

the court to accept the plaintiff's version of events as true

without scrutiny (and such a requirement would be

sufficiently odd that a court could not lightly infer it).

Nor is there anything that prevents a certificate from

issuing where the "incident" charged in the complaint did not

occur and the defendant engaged only in proper behavior

occurring wholly within the scope of his office or

employment. In sum, so far as the statute is concerned, this
 

is a proper certificate, unless and until a factual finding

in Wood's favor undermines the premise of the certificate.

 It is even clearer that the congressional policies

underlying the statute support the government's position. At

present, Owens is not presumed to be a molester; he is a

military officer who has been accused of making improper

advances to an employee whom he supervised in the course of

his official duties. To issue his certificate, the Attorney

General must have concluded that in this case the advances

 -33-
 33

were not made. Where the Attorney General has issued a

scope certificate, Congress intended to spare employees not

only from liability for misconduct related to their official

duties but also from the burden and expense of defending such
 

suits.3 

 In other words, the Westfall Act is not a simple

immunity statute saying that certain misconduct is protected

against liability and leaving the employee to assert that

immunity in litigation. Rather, by its precise terms and its

underlying policy, the statute meant to lift the case into a

federal forum and relieve the employee from the cost and

effort of defending the case if the Attorney General issues
 

the certificate.4 A certificate having issued in this case,

surely Owens should not be deprived of the advantage of

having the government defend the case, a protection that a

negligent postal employee would gain as a matter of course.

 Turning to precedent, the Supreme Court has not yet

 

 3The Supreme Court has been equally concerned, in
fashioning immunity doctrine, with "the general costs of
subjecting officials to the risks of trial--distraction of
officials from their governmental duties, inhibition of
discretionary action, and deterrence of able people from
public service." Harlow v. Fitzgerald, 457 U.S. 800, 816
 
(1982).

 4The statute directs "substitution" of the United States
for the defendant immediately upon issuance of the
certificate, it removes the case if pending in state court,
and it gives the defendant who is denied a certificate an
immediate right to challenge this decision before the judge.
28 U.S.C. 2679(d)(1), (2), (3). See also H.R. Rep. No.
 
700, 100th Cong., 2d Sess. 2 (1988).

 -34-
 34

addressed the issue in this case, but it has spoken recently

and emphatically about the procedures for resolving immunity

questions. The single thread that runs through these recent

decisions is that immunity-related issues should be decided
 

by the judge and at the earliest opportunity.5 It is, as
 

the Supreme Court has said, not only immunity from ultimate

liability after trial but also immunity from the burden of

going to trial at all that matters. Mitchell v. Forsyth, 472
 

U.S. 511, 526 (1985). If the certificate in this case is

invalidated without a factual finding, Owens will face the

burden of going to trial even though the evidentiary hearing

might show that at all times he conducted himself properly

and within the scope of his office.

 As for circuit court precedent relating to the Westfall

Act itself, our own Nasuti decision directly supports the
 

view that "where the facts underlying the scope certificate

are disputed, . . . the matter [must] be independently

resolved by the court . . . ." 906 F.2d at 813. Although a

panel decision is not binding on an en banc court, we
 

continue to find the reasoning in Nasuti persuasive and do
 

 

 5See, e.g., Hunter v. Bryant, 112 S. Ct. 534, 537 (1991)
 
("Immunity ordinarily should be decided by the court long
before trial."); Siegert v. Gilley, 111 S. Ct. 1789, 1793-94
 
(1991) (same); Anderson v. Creighton, 483 U.S. 635, 646 n.6
 
(1987) ("qualified immunity questions should be resolved at
the earliest possible stage"); Mitchell v. Forsyth, 472 U.S.
 
511, 526 (1985) (same); Davis v. Scherer, 468 U.S. 183, 195
 
(1984) (same); Harlow v. Fitzgerald, 457 U.S. 800, 818
 
(1982)(same).

 -35-
 35

not think the case distinguishable from this one. Other

circuits, in accord with Nasuti, have held or assumed that
 

the district judge may resolve facts that arise in the course

of a challenge to a certificate. See, e.g., Schrob v.
 

Catterson, 967 F.2d 929, 936 (3d Cir. 1992); Brown v.
 

Armstrong, 949 F.2d 1007, 1012 (8th Cir. 1991). 
 

 The only circuit "precedent" to the contrary is a very

brief statement in McHugh v. University of Vermont, 966 F.2d
 

67 (2d Cir. 1992). With respect, this statement is buried at

the end of a long opinion addressed to different issues and

may well be qualified by the sentence that immediately

follows. Id. at 74. It is by no means clear that the court
 

thought it was deciding the issue presented in this case, and

it certainly gave no reasons for deciding it one way or the

other, which strongly reinforces the inference that it did

not intend to decide the issue at all.

 Finally, while this is the least weighty of reasons, we

think that the reading urged by the government is the one

most consistent with sound administration of the statute. It

seems quite likely that the evidentiary hearing before the

district judge would be an efficient course: if Owens'

version of events were accepted after the hearing, that

finding would sustain the certificate and (by collateral

estoppel) dispose of Wood's claim on the merits at the same

time. If instead Wood's version were accepted, then we think

 -36-
 36

Owens would similarly be bound by the result; he would be

resubstituted as a defendant, and the case would proceed

before a jury on other unadjudicated issues, such as the

issue of damages.6

 By contrast, under the majority's approach, district

courts--and ultimately this court--will continue to engage in

difficult, time-wasting controversies (like this one) about

precisely which facts pertaining to the scope of employment
 

issue are for the district judge and which are for the jury.

Hair splitting distinctions and anomalous results will

multiply.7 If Congress commanded this course, then it

should be obeyed. But there is no reason to inflict these

hardships upon ourselves and the judicial process when

Congress' statute and its policy both look in the opposite

direction.

 III.

 

 6If the employee is content to have the government
substitute itself for him to defend his conduct, then we
think that his interests and the government's are
sufficiently aligned for collateral estoppel to operate
against him. See Montana v. United States, 440 U.S. 147, 154
 
(1979) (one who assists in the prosecution or defense of an
action in aid of some interest of his own is bound);
Restatement (Second) of Judgments 39.

 7For example, suppose Wood said she had been offensively
touched but Owens said he touched her only accidentally as he
was handing her a stack of correspondence. If the Attorney
General then granted a certificate, there would be an
"incident" and a clear scope of employment issue. Presumably
the certificate could not be set aside without a district
court factual finding. Why this case should follow a
different procedural course is hard to understand.

 -37-
 37

 The arguments against the resolution we propose

should be faced head on. The main adverse consequence,

perhaps the only practical argument against our reading, is

that it deprives the plaintiff of trial by jury on an issue

that goes to the heart of the merits, as well as to the

validity of the certificate. That common issue, turning

directly on credibility in this case, may be well suited for

jury resolution. This is not a small objection; the right to

jury trial as at common law is preserved by the Seventh

Amendment itself. While the Seventh Amendment ex proprio
 

vigore does not apply in this case, courts are protective of
 

jury trial, e.g., Pernell v. Southall Realty, 416 U.S. 363
 

(1974), and do not lightly read an ambiguous statute to cut

off the opportunity of a litigant to obtain a jury.8

 Yet under the Westfall Act the inevitable and deliberate

effect of what Congress has done is to supplant the jury for
 

all cases within the ken of that statute, including cases

where the scope question goes to the heart of the merits. In

the ordinary tort claim arising when a government driver

negligently runs into another car, jury trial is precisely

what is lost to a plaintiff when the government is

substituted for the employee. Because claims against the

 

 8The Seventh Amendment does not apply because there is
no constitutional right to a trial by jury against the United
States. See Lehman v. Nakshian, 453 U.S. 156, 160 (1981).
 
Through the statute and the certificate, Congress has made
this suit at present one against the United States.

 -38-
 38

United States are not normally subject to jury trial, 28

U.S.C. 2402, neither the plaintiff's claim of negligence

nor the question of damages is submitted to a jury. A case

of "deliberate" harm, such as might arise if a prison guard

or an FBI agent were sued for assault, could equally result

in a bench trial on the merits. See 28 U.S.C. 2680(h).
 

 Policy concerns would be quite different if the Attorney

General's certificate were allowed to preclude any judicial

adjudication of Wood's claim. However, the government has

abandoned its earlier position (which we rejected in Nasuti)
 

that its certificate is conclusive and now disowns a recent

circuit decision that reaches such a result, Johnson v.
 

Carter, 983 F.2d 1316 (4th Cir. 1993). Under our reading of
 

the statute, the plaintiff simply gets an adjudication on one

issue by the trial judge instead of a jury, with adequate

discovery and full opportunity to present and cross-examine

witnesses, which is the way that plaintiffs normally proceed

against the government. And given that substitution has

occurred, this is a case against the government unless and
 

until the certificate is set aside. 

 With respect, the more technical arguments of the

majority seem to us unpersuasive. In framing the Westfall

Act, Congress no doubt had in mind the classic case in which

"the wrongdoing" (if it occurred) was the type for which the

government would be responsible under respondeat superior
 

 -39-
 39

doctrine. But a claim of perfect symmetry between the

certifiable conduct (under the Westfall Act) and government

liability (under the Federal Tort Claims Act) is refuted, and

definitively so, by United States v. Smith, 111 S. Ct. 1180
 

(1991). Smith held that the Westfall Act immunizes the
 

employee for conduct within the scope of employment even if
 

there is no remedy against the United States. Id. at 1185.
 

Accord, H. Rep. No. 700, supra, p. 6.
 

 Similarly, it seems to us beside the point that Congress

plainly did not intend to grant immunity to employees who act

egregiously. Owens has not been found to have molested
 

anyone; he is charged with misconduct, just as a postal
 

employee might be accused of negligent driving or an FBI

agent of assault during the arrest of a suspect. If Owens is

found by the district judge to have engaged in harassment, he

will not have immunity and will be personally liable. Until

that happens, the certificate affords him the procedural

advantages of government substitution and representation.

 The majority also relies upon the House Report on the

Westfall Act, which states that "[i]f an employee is accused

of egregious misconduct, rather than negligence or poor

judgment, then the United States may not be substituted as

the defendant, and the individual employee remains liable."

H. Rep. No. 700, supra, p. 5. There is no hint that Congress
 

meant to place any weight on the word "accused." From the

 -40-
 40

prior and succeeding sentences, it appears that the House

Report was simply assuring readers that the United States

would not take on the burden of paying for the egregious

torts of employees plainly committed outside the scope of

employment. See id. That result will be achieved whether
 

the judge or jury makes the initial determination of what

happened.

 Finally, the majority's broadest but we think least

persuasive argument is its intimation that Congress would be

dismayed to discover that its statute applied to Owens.

Certainly Congress would be shocked if harassment were held

to be covered by official immunity, but no one is suggesting

that it is. Congress could not be shocked to discover that

its statute might apply where intentional harm was charged,

since intentional harm clearly is covered in some cases.9 

The reality is that Congress in this case, as with many

statutes, probably did not think one way or the other about

unusual applications, and it is an illusion to think that one

knows just what Congress would have thought if it had faced

the precise issue in this case.

 In such cases, the court's job is not to speculate about

 

 9Notably, the Federal Tort Claims Act itself waives the
government's sovereign immunity for claims of assault,
battery and false imprisonment by law enforcement officers.
28 U.S.C. 2679(h). It must be undisputed that an
individual FBI agent, if sued for assault during an arrest,
could obtain a valid Westfall Act certificate.

 -41-
 41

legislative intent that never existed. Rather, our task is

to piece out the statutory edifice as best we can, "giv[ing]

coherence to what Congress has done within the bounds imposed

by a fair reading of [the] legislation." Achilli v. United
 

States, 353 U.S. 373, 379 (1957). And if Congress is
 

displeased when it sees how its general language and purpose

have been fitted to the case, it is always open to Congress

to refine its statute.

 Having stated our view as to what the statute requires, we

want to make clear that the charge made by Wood against Owens

is a very serious one involving--if the allegations are true-

-multiple abuses of Owens' position as a government official

as well as continuing sexual harassment. Nothing in this

opinion should suggest that Wood's version of events is

unsubstantial or implausible. We simply do not know: The

Attorney General's certificate may be well founded or it may

rest on a faulty factual premise. Our concern is simply to

have the validity of the certificate and the correctness of

its premise determined swiftly and at the outset, in

accordance with Congress' statutory plan.

 For the reasons stated, we would vacate the order of the

district court and remand the case for an evidentiary hearing

to determine whether Owens, in his conduct vis a vis Wood,

acted solely within the scope of his office or employment.

 -42-
 42